J-A25042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THE MATTER OF THE ADOPTION OF: | : | IN THE SUPERIOR COURT OF |
| J.A.R., A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.R.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 526 WDA 2023 |

Appeal from the Decree Entered May 1, 2023
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 4 in Adoption 2023

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: April 5, 2024**

R.R.K. (Mother) appeals from the decree entered May 1, 2023 in the Court of Common Pleas of Erie County Orphans' Court that involuntarily terminated her parental rights to her son, J.A.R. (Child), who was born in 2015.  In this appeal, Mother's counsel filed a petition to withdraw and an **Anders**[1] brief, stating that the appeal is wholly frivolous.  After careful review, we grant counsel's petition to withdraw and affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] Counsel for Mother on March 6, 2024 filed a second petition to withdraw based on the fact that he has now become a guardian *ad litem* in the dependency system.  Because we grant his first petition to withdraw, we deny the second petition as moot.

On February 23, 2022, the Erie County Office of Children and Youth (OCY) obtained an emergency protective order removing Child from Mother. OCY placed Child in foster care, and on March 14, 2022, Child was adjudicated dependent and ordered to remain in foster care based on Mother's drug use, her allowing contact between Child and her paramour, who was prohibited from having contact with Child, and her failure to make sure Child attended school. Juvenile Court Adjudication and Disposition, 3/14/22 at 1-4. In this adjudication, the juvenile court ordered that Mother have supervised weekly visits with Child and ordered that Mother, *inter alia*, refrain from using drugs and alcohol; participate in a drug and alcohol assessment and follow through with all treatment recommendations; participate in a mental health assessment and follow through with all treatment recommendations; participate in an approved domestic violence class and demonstrate the ability to refrain from violent relationships; participate in an approved parenting program and follow through with all recommendations, as well as demonstrate the ability to properly parent and care for Child; maintain safe and secure housing and provide proof of residency; obtain and maintain employment or another appropriate source of income; and attend all medical and educational appointments for Child. *Id.* at 5.

Permanency review hearings were held on June 22, 2022 and December 5, 2022. The juvenile court found, following the first permanency review hearing, that Mother was minimally compliant with her obligations under the

adjudication and disposition order and had made minimal progress toward alleviating the circumstances which necessitated Child's removal from her home.  Juvenile Court Permanency Review Order, 6/27/22, at 1.  In this first permanency review order, the court again ordered that Mother refrain from using drugs and alcohol; required her to participate in specific drug and alcohol treatment programs; required her to participate in specific mental health, domestic violence, and family reunification programs and to demonstrate the ability to properly parent and care for Child; ordered her to engage in Child's trauma therapy to the extent requested by his therapist; and again ordered that Mother maintain safe and secure housing and provide proof of residency, obtain and maintain employment or another appropriate source of income, and attend all medical and educational appointments for Child.  *Id.* at 3.

In September 2022, before the second permanency review hearing, OCY filed a motion to suspend Mother's visits with Child because the visits were causing Child to engage in aggressive and threatening behavior, and the juvenile court ordered the visitation suspended.  N.T., 2/10/23, at 52-53; N.T., 4/14/23, at 19-21; Juvenile Court Order, 9/20/22.  Following the second permanency review hearing, the juvenile court found that there had been no compliance by Mother with her obligations under its permanency review order or progress by Mother toward alleviating the circumstances which necessitated Child's removal and ordered that Child's permanency placement goal be

changed to adoption. Juvenile Court Permanency Review Order, 12/7/22, at 1.

On January 5, 2023, OCY filed a petition for involuntary termination of the parental rights of Mother.[3] The Orphans' Court appointed counsel to represent Child and held hearings on the petition for termination of parental rights on February 10, 2023 and April 14, 2023, at which nine witnesses testified, four OCY employees, two employees of family services agencies, Mother and her mother, and a clinical psychologist who had performed a bonding assessment of Child.

On May 1, 2023, the Orphans' Court entered a decree terminating Mother's parental rights, finding that Mother failed to stop using drugs and did not make diligent efforts to do so, that Mother refused assistance, that Mother was unable and unwilling to safely and adequately care for Child, and that OCY had proved grounds for termination of parental rights under Section 2511(a)(1), (2), and (5) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5). Orphans' Court Order, 5/1/23, at 1; Orphans' Court Opinion at 21-26. The Orphans' Court further found that termination of Mother's parental rights was in Child's best interest and that the requirements of Section 2511(b) of the Adoption Act, 23 Pa.C.S. § 2511(b), were satisfied, concluding that the

---

[3] OCY also sought involuntary termination of the parental rights of Child's biological father (Father) in this petition. Father, who did not live with Mother and had no involvement in Child's life, voluntarily relinquished his parental rights on February 10, 2023.

evidence showed that contact with Mother was harmful to Child and that severing his bond with Mother would not be detrimental to him. Orphans' Court Order, 5/1/23, at 2; Orphans' Court Opinion at 25-26.

On May 5, 2023, Mother filed this timely appeal. On August 25, 2023, Mother's counsel filed an *Anders* brief and petition to withdraw as counsel. In his *Anders* brief, counsel presents the following issues:

> A. Whether the Orphans Court committed an abuse of discretion and/or error of law when it determined that the petitioner established, by clear and convincing evidence, the grounds for termination of parental rights pursuant to 23 Pa. C.S. 2511(a)(1)?
>
> B. Whether the Orphans Court committed an abuse of discretion and/or error of law when it determined that the petitioner established, by clear and convincing evidence, the grounds for termination of parental rights pursuant to 23 Pa. C.S. 2511(a)(2)?
>
> C. Whether the Orphans Court committed an abuse of discretion and/or error of law when it determined that the petitioner established, by clear and convincing evidence, the grounds for termination of parental rights pursuant to 23 Pa. C.S. 2511(a)(5)?
>
> D. Whether the Orphans Court committed an abuse of discretion and/or error of law when it determined that the petitioner established, by clear and convincing evidence, the grounds for termination of parental rights pursuant to 23 Pa. C.S. 2511(b)?

*Anders* Brief at 4 (unnecessary capitalization omitted). Mother has not filed any response to counsel's petition to withdraw or *Anders* brief. OCY and counsel for Child did not file briefs in this appeal and advised this Court that they agree with the Orphans' Court's decision.

Before this Court can consider the merits of this appeal, we must first determine whether counsel has satisfied all of the requirements that court-

appointed counsel must meet before leave to withdraw may be granted. *In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020); *In re J.D.H.*, 171 A.3d 903, 905 (Pa. Super. 2017).

To withdraw from representing a party that is entitled to counsel on the basis that the appeal is frivolous, counsel must (1) petition the court for leave to withdraw stating that he has made a conscientious examination of the record and has determined that the appeal would be frivolous; (2) file a sufficient *Anders* brief; and (3) provide a copy of the *Anders* brief to the client and advise the client of her right to retain new counsel or proceed *pro se* and to raise any additional points that she deems worthy of the court's attention. *In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa. Super. 2020); *In re X.J.*, 105 A.3d 1, 3-4 (Pa. Super. 2014). The *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*B.G.S.*, 240 A.3d at 661 (quoting *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009)); *see also J.D.H.*, 171 A.3d at 907. If counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review

of the record and render an independent judgment as to whether the appeal is wholly frivolous. *B.G.S.*, 240 A.3d at 662; *X.J.*, 105 A.3d at 4.

Counsel has filed a petition to withdraw in which he states in that he has made a conscientious examination of the record and determined that there are no non-frivolous grounds for the appeal. Counsel provided copies of the *Anders* brief and petition to withdraw to Mother and has sent a letter to Mother advising her of her right to retain new counsel or proceed *pro se* on appeal and to raise any points she deems worthy of the court's attention. Counsel's *Anders* brief provides a procedural and factual summary of the case with references to the record and cites and discusses the applicable law on which counsel bases his conclusion that there are no non-frivolous issues that he can raise on Mother's behalf. Counsel has thus filed a sufficient *Anders* brief and has adequately complied with the procedural requirements for withdrawal as counsel in this appeal.

We therefore proceed to conduct an independent review to ascertain whether the appeal is indeed wholly frivolous. This Court first considers the issues raised by counsel in the *Anders* brief and determines whether they are in fact frivolous. *B.G.S.*, 240 A.3d at 662; *J.D.H.*, 171 A.3d at 908. In addition, if the Court finds those issues frivolous, this Court conducts an examination of the record to discern if there are any other issues of arguable merit overlooked by counsel. *B.G.S.*, 240 A.3d at 662; *J.D.H.*, 171 A.3d at 908.

Our standard of review in this appeal is clear:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (quoting *In re R.N.J.*, 985 A.2d 273 (Pa. Super. 2009)). We conclude that the Orphans' Court's findings are supported by the record and that it did not err in holding that the requirements of Section 2511 of the Adoption Act for termination of parental rights were satisfied.

Under Section 2511, the courts must engage in a bifurcated analysis prior to terminating parental rights. *In re Adoption of A.H.*, 247 A.3d 439, 442 (Pa. Super. 2021); *B.J.Z.*, 207 A.3d at 921. Initially, the focus is on the conduct of the parent, and the party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies one of the statutory grounds for termination set forth in Section 2511(a). *A.H.*, 247 A.3d at 442; *In re N.A.M.*, 33 A.3d 95, 99-100 (Pa. Super. 2011). If the court determines that the parent's conduct warrants termination of her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b), a determination of the needs and welfare of the child under

- 8 -

the standard of best interests of the child. **A.H.**, 247 A.3d at 442; **B.J.Z.**, 207 A.3d at 921.

The Orphans' Court terminated Mother's parental rights to Child under Sections 2511(a)(1), (2), and (5). Only one ground for termination under Section 2511(a) need be shown to support the termination of parental rights, however, and we therefore need only agree with the Orphans' Court as to one of these subsections, in addition to Section 2511(b), in order to affirm the termination of parental rights. **A.H.**, 247 A.3d at 442; **N.A.M.**, 33 A.3d at 100. We conclude that the evidence was sufficient to support termination under Section 2511(a)(2).[4]

Section 2511(a)(2) provides, in relevant part, as follows:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2). This ground for termination does not require a showing of affirmative misconduct by the parent; incapacity of the parent to perform parental duties that cannot be remedied is sufficient to support

---

[4] We therefore need not and do not determine whether Mother's Issues A and C, concerning Sections 2511(a)(1) and (5) have any merit.

termination of parental rights. *A.H.*, 247 A.3d at 443; *B.J.Z.*, 207 A.3d at 922. "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *N.A.M.*, 33 A.3d at 100.

The record here supports the Orphans' Court's determination that Mother's incapacity and neglect caused Child to be without essential parental care and that she could not or would not remedy the causes of that incapacity and neglect. Testimony at the hearings established that Child had been injured in a car accident by Mother's paramour and not taken for medical treatment, was in and out of shelters, was exposed to drug use, had problems with aggression and suffered from post-traumatic stress, and was not attending school reliably as a result of Mother's drug abuse and mental health issues. N.T., 2/10/23, at 11, 41-45, 65, 100, 109-10; N.T., 4/14/23, at 6-7, 9, 16-17, 19. Several witnesses who worked with Mother and Child testified that between Child's removal and the December 2022 permanency hearing, Mother used drugs on multiple occasions, had repeated incidents of positive drug tests and failure to submit to drug tests, was removed from drug treatment programs or left against medical advice, and did not successfully complete any mental health treatment program. N.T., 2/10/23, at 33-34, 47-60, 63-64, 69-70, 80-83. Mother herself admitted that she used drugs, including methamphetamine and fentanyl, and failed drug tests throughout that period. *Id.* at 101-04. Although Mother claimed that she stopped using drugs after the December 2022 hearing, *id.* at 84-86, 88, 97-99, the Orphans'

Court did not find her testimony credible. Orphans' Court Opinion at 24-25. Moreover, Mother admitted that she had a past history of temporarily stopping her drug use and relapsing, and there was evidence that she had denied drug use in the past when she was in fact still using drugs. N.T., 2/10/23, at 68-69, 100-01, 103.

In addition, there was testimony from multiple witnesses who had observed Mother's interactions with Child that Mother was unable or unwilling to act as parent in dealing with Child's behavioral problems. N.T., 2/10/23, at 9-10, 18-19, 26-27, 71-78, 111; N.T., 4/14/23, at 24-27. These deficiencies included Mother failing to restrain Child from trying to run into a busy street and Mother allowing Child to repeatedly hit and kick her. N.T., 2/10/23, at 72-73, 75-78. Despite these problems, Mother was uncooperative with her parenting assistance program and was discharged from the program. N.T., 2/10/23, at 33-39, 53, 63, 70.

The Orphans' Court likewise did not err in finding that the requirements of Section 2511(b) were satisfied. Section 2511(b) provides, in relevant part:

> **(b) Other considerations.—**The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b). Under this section, the Orphans' Court is to consider intangible factors, such as love, comfort, security, and stability, whether the

child has any emotional bond with the parent, the nature of that bond, and the effect on the child of permanently severing the parent-child bond. ***B.J.Z.***, 207 A.3d at 922; ***N.A.M.***, 33 A.3d at 103. The Section 2511(b) analysis is focused on the needs and welfare of the child over the concerns of the parent, and each child's particular developmental, physical, and emotional needs must be assessed on a case-by-case basis. ***In the Interest of K.T.***, 296 A.3d 1085, 1105 (Pa. 2023). The lower court must consider the emotional bonds between the parent and child, with the threshold inquiry being whether termination will sever a necessary and beneficial relationship, such that the child could suffer extreme emotional consequences or significant, irreparable harm. ***Id.*** at 1109-10.

The Orphans' Court based its conclusion that terminating Mother's parental rights was in Child's best interests on its findings that contact with Mother caused Child to engage in harmful behaviors, that he improved when he no longer had contact with her, and that severing Child's bond with Mother would have no detrimental effect on him, and considered expert opinion concerning Child's bond with Mother and Child's need for a secure environment in reaching its conclusion. Orphans' Court Opinion at 9-12, 25-26. The record supports the Orphans' Court's determination.

Witnesses who worked with Child after he was removed from Mother's home testified that Child became aggressive during and after his visits with Mother, including threatening to kill his foster mother and others and hurting

her autistic son. N.T., 2/10/23, at 51, 53, 73-74; N.T., 4/14/23, at 11, 20, 24-25; OCY Ex. 13. The witnesses who continued to work with Child testified that his behavior significantly improved after his visits with Mother were stopped. N.T., 2/10/23, at 59, 61-62; N.T., 4/14/23, at 20-22.

While there was evidence that there was affection between Child and Mother and that Child was happy to see Mother at the visits, N.T., 2/10/23, at 22, 24, 109; N.T., 4/14/23, at 24, 27, there was also evidence that Child did not ask to see Mother after contact with her stopped and that he was not negatively affected by lack of contact with her. N.T., 2/10/23, at 61-63; N.T., 4/14/23, at 20, 22. The clinical psychologist who had performed a bonding assessment of Child opined that the attachment between Child and Mother was not a secure attachment and that severing the relationship with Mother would be better for Child. N.T., 2/10/23, at 20-23. In addition, Child's caseworker testified that she did not believe that severing Child's bond with Mother would have any detrimental effect on him and that terminating Mother's parental rights would best serve Child's needs and welfare. N.T., 2/10/23, at 62, 64.

Accordingly, we conclude from our independent review that the evidence in the record supports the Orphans' Court's determinations that OCY proved grounds for termination of Mother's parental rights under Section 2511(a)(2) of the Adoption Act and that terminating Mother's parental rights was in Child's best interest. Mother's issues are therefore without merit. In addition, our

review of the record does not reveal any non-frivolous issues overlooked by counsel. We therefore grant counsel's petition to withdraw and affirm the Orphans' Court's decree.

Petition to withdraw granted. Decree affirmed. Second petition to withdraw denied as moot.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/05/2024